Our next case for the day is Great Lakes Insurance v. Raiders Retreat, No. 21-1562. You may proceed, Counsel. Good morning, Your Honors, and may it please the Court. My name is Howard Bashman, and I represent Defendant Appellant Raiders Retreat. With the Court's permission, I'd like to reserve three minutes for rebuttal. That will be granted. Thank you. The District Court's dismissal of Raiders III Pennsylvania law counterclaims should be reversed for two reasons. First, the insurance policy's narrowly worded designation of New York law to apply in the absence of any governing principles of Federal Advocacy Law does not apply to Raiders tort-like extra-contractual counterclaims at issue. And second, even if the plain language of the choice of law provision were broad enough to mandate applying New York law to those counterclaims, the principles that the Supreme Court announced in the Bremen require reversal because applying New York law would contravene the strong public policy of the forum state where suit was brought, meaning Pennsylvania. Isn't the second argument your stronger one? Well, we think that both arguments are strong, but if you believe that's stronger, I'm happy to address it. I'm asking you. Do I think the second argument's the stronger one? The stronger one, yes. I think that the plain language of the choice of law provision is very narrow, as we demonstrated in our brief. Even under New York law, it would not apply to extra-contractual tort-like claims. The Bremen argument is one that this Court has never addressed. Some other courts have addressed it and have not proceeded to uphold the forum law in place of the contractual designation of choice of law. I think there's an interesting question here about the place that public policy has, or lack thereof. The Carnival case, which we pointed out to you, doesn't explicitly talk about the policy of the forum state. It seems to be a question, why should we consider the policy of the forum state? Well, we think that the Carnival decision is helpful in our respect, and let me address your Honor's specific question in that regard. I think the reason that the policy of the forum state may not have been considered in the Carnival case is simply that it involved where the suit would occur, meaning it was a forum selection clause as opposed to a choice of law provision. And yes, in the Bremen, the Supreme Court recognized that strong public policy considerations could be enough to override even a choice of forum provision. But isn't that dealing with two countries as opposed to two states? Well, that's true. But the Carnival decision recognized that even the Bremen would apply in the forum selection realm where two states are at issue. And the Fifth Circuit, rather the D.C. Circuit's decision in the Milanovic case, which applied the Bremen to a choice of law issue between two states, the Durham Auctions decision of the Fifth Circuit, where the question was, under this very policy language at issue here, because that was also a case that involved Great Lakes, whether it was proper to apply New York law versus Mississippi law, and then the Deep Sea financing decision, which is a federal district court decision from the Southern District of Georgia, also applied the Bremen to a choice of law dispute between two states. Well, now, the suit opinion out of the Fifth Circuit, there was no mention of public policy of the forum state there, right? I think that that's right. But the Durham Auctions decision also from the Fifth Circuit, applying this very same choice of law provision that Great Lakes has in this case, did recognize that it is possible for a forum's public policy to override the choice of law provision. In that case, it found that the Mississippi public policy was not strong enough. But that case, contrary to what Great Lakes argues in its brief in this case, did not involve a bad faith counterclaim being asserted by the insured. That case was solely concerned. In fact, that case had settled before it even reached the Fifth Circuit. And the appeal that was before the Fifth Circuit was simply to decide which law applied, because the plaintiff would get, or rather the defendant, the insured, would get a larger settlement if Mississippi law applied, and a smaller settlement, but still something, if New York law applied. Case for controversy? That's odd. Well, okay. Well, the Fifth Circuit believes so. In most cases, the parties confer and negotiate and determine which state's law applies. In other words, they agree on the choice of law in advance. This is, I guess you could say, for lack of a better term, a contract of adhesion, in that Great Lakes supplied this concept special risks document that included a choice of law provision. So it was not negotiated in the context of this case. And in fact— The party that they were negotiating with agreed. Is that correct? We did not seek to withdraw from the insurance coverage as a result of having received those forms after we entered into it. But again, if you look at the plain language, this gets back to Judge Ambrose's original question, of the choice of law provision, what it says is where no such established, entrenched federal admiralty precedent exists. And both sides agree that federal admiralty law does not address whether these types of Pennsylvania law counterclaims can or cannot be brought. You mean counts three, four, and five? This—right. Great. This insuring agreement is subject to the substantive law of New York State. Now, the language of the choice of law provision is imbalanced, in that the first part says any dispute arising hereunder shall be adjudicated according to well-established, entrenched principles of substantive federal admiralty law. But then the second half says where no such established federal admiralty law exists, this insuring agreement is subject to the substantive law of New York State. And as we've demonstrated, citing to New York State, State appellate decisions, Second Circuit decisions, it's recognized as a matter of New York law that that type of a choice of law provision is not broad enough, does not mandate requiring New York law to extra-contractual tort-like claims, which are precisely the type of counterclaims at issue here. I'd like to ask you a question about that. This hasn't been briefed or raised by the other side, which you never love to hear from the bench, right? Like, oh, God. But in your brief, you talk a lot about extra-contractual claims, pointing at the tort claims. Was this something you raised in the district court? Because I sure couldn't find it. I actually used my little Control-F to find if you said extra at all. You didn't in the papers before the district court. Is that forfeited in terms of the scope of whether tort claims fall outside? It's not a bad argument, but I don't think it was raised before the district court, per se. I mean, it's a gloss on what you talked about, but maybe not exactly explicit. Maybe you could deal with that. I appreciate Your Honor's question. And as someone who regularly appears at this podium, I had anticipated that perhaps this could come up, even though Great Lakes, as you point out, did not argue forfeiture, did not argue waiver. Under the law of other circuits, this Court, I don't believe, has ever grappled with it, but I'm sure Chief Judge Shigaris, you're familiar with this. The appellee can forfeit forfeiture by not bringing it up. It can waive waiver by not bringing it up. Here we have a pure legal issue that's based upon contractual language. We have district court decisions that have addressed this from other courts that are cited in the briefs. We have the Banador sports fishing decision that Great Lakes cited in its Rule 28J letter. At appendix page 286, we said the policy we wrote in our brief in opposing the motion to dismiss, we said the policy states that New York law applies to its terms, which is precisely the same point that I'm making. It just applies to the terms. And then at page 296, we said that Great Lakes argues that New York law applies. Raiders disagrees and argues that Pennsylvania law applies. This Court's decision in Dennis v. Philadelphia from last year, which I believe Judge Roth wrote, said that on appeal, a party can place greater emphasis on an argument and more fully explain that argument and even reframing the argument is okay. So we believe that between the fact that the other side has not urged this court that the argument is not properly before it, the fact that it's a pure question of law and fully briefed, the fact that I believe now five district court decisions have weighed in on it. Yes, we're putting more emphasis on it now. I agree with that. But I believe the other side tries to deal with it by saying, you know, look, here are some decisions that have examined it and have said, you know, we don't believe that the insurance company intended for the choice of law provision to be imbalanced, even though that is what has resulted. Well, I don't mean to go too deeply into the weeds on this point, but the district court also didn't get a chance to deal with it. Do we have to let them deal with it? As I said, it's been dealt with by the Middle District of Penn State. But in this particular case, is it best to send this back? The judge had the language of the provision in front of him and found that it applied. So I don't think it would be right. It's necessary. Let me put it that way. Obviously, the court can do whatever it chooses in that regard. We don't think it's necessary to do that, And we think that Judge Cain, when she relied upon Judge Rebreno's decision in this case, in the Matador sports-fishing case, which did squarely present that question, that's the way it's going to come out in this case as well. The question is which law applies in this case. Right. Whether we have a contractual choice of law provision that's very narrow, we believe that you do apply New York law to determine the scope of that provision. As the policy says, you must. You say New York law applies in this case. To determine the scope of that provision. And under New York law, the scope of that provision is not broad enough to mandate the application of New York law to extra-contractual tort-like claims. And so after applying that provision, it just doesn't reach far enough to require the dismissal of the kind of provision. When you say extra-contractual, do you mean it's not within the contract? Right. The counterclaims involve insurance bad faith under Pennsylvania law, which the Supreme Court of Pennsylvania has decided is a tort-like extra-contractual claim. That I believe is counterclaim count four. Counterclaim count five is the Pennsylvania unfair trade practices law, which the Supreme Court of Pennsylvania recognizes is not a contract-based claim. And then counterclaim count three is breach of fiduciary duty, which Pennsylvania courts and I believe even some federal courts have recognized is a tort-like claim. If everything that you say is possibly a strong public policy, we don't know for sure, wouldn't that possibly call for a remand and or a certification to the Pennsylvania Supreme Court for them to tell us if breach of fiduciary duty, insurance bad faith, or a violation of the Pennsylvania unfair trade practices law is strong public policy? Let me answer that question directly. We have more difficulty demonstrating that breach of fiduciary duty is a strong public policy under Pennsylvania law, but we believe that the Pennsylvania Supreme Court decisions that we've cited to that address the bad faith act and the unfair trade protection, unfair trade practices act do demonstrate that those are strong public policies, but we would not oppose that relief if this court believed that that was necessary. We'll pick up on that rebuttal then. Thank you, Your Honor. Thank you, counsel. We'll get you on rebuttal. Thank you. May it please the court. My name is Michael Goldman. I'm counsel for Great Lakes Insurance. One of the things in my prior life, in addition to later on bankruptcy, was the giving of legal opinions and transactions, and you would give something that's legal, valid, binding, and enforceable, subject to equitable principles and public policy. Excuse me, Your Honor. Correct, please. Equitable principles and public policy. I'm sorry. Yes. And the question here is, I mean, the typical example that we would give is that if I entered into a employment contract and it says that Ohio law applies, and Ohio law says that, Ambrose, you can have a very broad employment restriction if I try to switch from your organization, and you bring suit in Pennsylvania, and Pennsylvania law says, wait a minute, wait a minute. What Ohio law allows is far too broad in Pennsylvania. Maybe two years, maybe a small geographic area, but not nearly as broad as what Ohio law allows. Even though Ohio law applies to this contract, we will not, as a matter of public policy, enforce this covenant not to compete in Pennsylvania. That's the paradigm example. In this case, you can see with these facts, if there is a claim for damage, and it has nothing to do with the certification as to fire equipment, someone could claim that as a matter of public policy, that there's no way that you don't allow the foreign, or you don't require the foreign state to enforce the violation of its own public policy. I don't know if insurance bad faith or unfair trade practices under Pennsylvania law is necessarily a strong public policy. It could possibly be, but shouldn't this be not necessarily a reversal, but a vacation and letting someone, either the district judge to look at it, or possibly certified to the Pennsylvania Supreme Court, as to whether these are strong public policies that would therefore override the choice of New York law in the agreement. The dispositive difference between the example you just gave, Your Honor, and our present situation is this. We are not dealing with a situation where you have two equally situated bodies of law. You have federal law and state law, and as the binding decision from the Supreme Court in Wilburn Boat says, you first have to examine whether or not there's an established, entrenched rule of federal admiralty law, and the court goes on to say if there's such a rule, the court then has to apply it. Federal admiralty law is a body of common law, but with respect to state law, it occupies exactly the same position as an act of Congress, and the Supreme Court said. Wilburn Boat was back, what, in the 50s? 1955, that's correct. And then Bremen was 72. Bremen was 72. And then, although that was choice of forum, and then Malonovich from the D.C. Circuit says that you can apply it to choice of law, and Carnevale says in a dispute between states, in that case, I guess, Washington and Florida, that the Bremen applies, and Bremen specifically allows a carve-out for strong public policy. And so it would seem that that issue has to be addressed. It isn't a hierarchy of maritime versus state law. It's New York law versus Pennsylvania law, because I thought it was agreed that this is extra-contractual, and therefore maritime law doesn't govern. It's New York law supposedly governs, but Pennsylvania may have a strong public policy against those two counts, four and five, that I previously mentioned. In that case, Your Honor, let me go into exactly what this court said. It wanted to hear about Carnevale Cruise Lines. Carnevale Cruise Lines is absolutely irrelevant to this case. There is not a single word in Carnevale Cruise Lines that has any applicability here. But it does, in one sense, you're correct, but it does apply the Bremen to a state dispute, does it not? Washington versus, I mean, they sued in Washington, and the question is, does the Florida, is there arbitration in Florida, is that right? I believe it was the arbitration provision, but no, it's not correct that Carnevale Cruise Lines dealt with state law. It dealt, the underlying law was federal tort law. The only question in that case, and this is exactly the same case with Bremen, Your Honor. Bremen was also strictly a foreign selection clause. Bremen does have a card out for strong public policy, does it not? Bremen says, in that case, it said there was no strong public policy of the federal forum against enforcing a foreign selection clause. That was Louisiana and Italy, and the question was, do you sue? I'm sorry. That was Louisiana and Italy, I guess? Yes. And then the question is, do you have London courts decide? Yes. Okay. So here, you've got, you know, the courts that are deciding are, the courts are in Pennsylvania. And I can't get around that if Pennsylvania has a strong public policy, that these particular facts are an insurance bad faith or a breach of Pennsylvania's own unfair practices law. I don't know how I get around that. The way you get around it, Your Honor, is that there is an entrenched rule of federal admiralty law saying that choice of law clauses. This is a rule totally separate from foreign selection clauses. As this court has held in AGF Marine v. Cassin, as the 11th Circuit held in King v. Allstate, as the First Circuit held in Littlefield v. Acadia, there is an entrenched rule of federal admiralty law that says foreign selection clauses are presumptively valid and enforceable. Under that entrenched rule, the only relevant consideration. Subject to public policy. None of those decisions say that, Your Honor. That's not correct. Excuse me, Your Honor. You're fine. You're fine. Go ahead. Furthermore, Your Honor, there are two appellate court decisions which have addressed public policy. Durham and the other decision is the Chan case from the 9th Circuit. I'll say two things on both with respect to those. First of all, neither of them held that a state bad faith law was enough of a strong public policy. Durham auctions dealt directly with Mississippi's bad faith statute. And Durham auctions said Mississippi's public policy in favor of punishing bad faith was not sufficiently strong to defeat a choice of law clause under federal admiralty law. Now, as I keep saying, I maintain that that whole analysis borrowed from Bremen is wrong. That public policy isn't strong enough. But I don't think you and I can answer whether Pennsylvania public policy on this is strong enough. And my guess is the Pennsylvania Supreme Court may need to answer that by way of certification. I think there is a way, Your Honor. Let me skip to the end. Could I just, I think maybe we're talking past each other. You're saying public policy doesn't even come into, as my kids might say, we don't even need to go there. That is absolutely correct, Your Honor. It doesn't matter if the Pennsylvania legislature passed a statute. We hate federal admiralty law. We don't care. We want our bad faith statute enforced, notwithstanding a choice of law clause. They could take hostages, Your Honor. It doesn't matter how strong their public policy is. Wilburn Boat says if there's an entrenched rule of federal admiralty law, that applies. End of discussion. Judge Manbrose points out that the Bremen does talk about policy. I understand it's not quite on all fours factually with this case. How do you get around that, though? Because it does. I'm sorry. I'm having trouble, I think, communicating it. Choice of law clauses are entirely separate from forum selection clauses. The Supreme Court has spoken on forum selection clauses. And, please, before I continue, Your Honor, I want to address exactly what Judge Manbrose said about Pennsylvania public policy. I think it is possible without even looking at this particular record. The case law I cited in my brief, Your Honor, is that Pennsylvania law, Pennsylvania also enforces choice of law clauses. And the Pennsylvania courts have said even where the chosen law is less favorable than Pennsylvania law would be to the Pennsylvania party. There is a line. Once it's crossed, the forum state will not enforce. And that's why we have the typical exception in enforceability opinions. It happens all the time. I just gave you one example. So, again, I don't know the answer as to whether this is strong public policy in Pennsylvania. But there's a plausible argument that it is. And the optics, you know, don't appear great when you say an insurance company is denying coverage because of something that purportedly wasn't certified to that didn't cause the collision, didn't cause the damage. And you can see how this would cause someone some concern. Absolutely, Your Honor. And I have no doubt that Pennsylvania has. I'm sure if we were to go to the Pennsylvania Supreme Court, I'll concede for purposes of the argument today, Pennsylvania would say we feel very strongly about this policy that our insurance should be protected by Pennsylvania law. But the answer would still have to go back to Wilburn Boat. And, frankly, the supremacy clause, which Wilburn Boat said, is the issue. This contract says maritime law governs where maritime laws apply. Other than that, you can extra contractually choose a choice of law. So that's New York. So it's almost like maritime doesn't apply. So there's no hierarchy by which maritime law supersedes. And you bring it in Pennsylvania rather than in New York, this particular case. And the question is, what would a Pennsylvania court do in this particular example? And I, as you suggest, it might very well say this is a strong public policy. And I'm not so sure in this field, which is, you know, still progressing in terms of development, that Pennsylvania doesn't have a strong public policy that would allow claims four and five to proceed. I must try and figure out how. Is there any particular rhetorical question? Is there any other field in which a state strong public policy could nullify federal law? The answer is absolutely not because of the supremacy clause. But the question in this developing field is maritime law allowing a choice of another state's law necessarily mean that the, that choice is paramount. And there is no exception whatsoever to that choice. But if Carnival at least says, adopts the Bremen analysis without saying about strong public policy, and this is a choice between New York and Pennsylvania, I'm hard pressed to see why, how a Pennsylvania court is necessarily precluded from considering whether counts four and five suggest strong public policy in PA. Because the strong public policy of Pennsylvania has absolutely no part in the choice of law analysis. Which is, if we were, but that's. And that's an argument. I'm not, I'm not denying that it is a good argument, but I think there's a very plausible argument the other way. That's not what, let me add this. That's not what the first, that's not what the third in AGFV Cassin said. That's not what the 11th said in King v. Allstate. And I'd like to point out, Your Honor, the two courts that have, I think, mistakenly applied the Bremen analysis. There were two of them. It's the Chan case from the Ninth Circuit and Durham Auctions from the Fifth. Both of those, including Durham Auctions, which had exactly the same choice of law clause and a state bad fate statute. Both of them, even considering the state public interest, enforce the choice of law clause under federal admiralty law. Both of those circuits, Your Honor, have since retreated from reliance on Bremen. They haven't specifically said it was wrong, but implicitly they've rejected it. There's a case from. I'm not saying Bremen's wrong at all. No, no, excuse me. What I'm saying is, Your Honor, is they have stepped back from applying Bremen to choice of law clauses. There's a case from the Fifth Circuit. Well, I mean, the point is that that bridge, I mean, if you buy what the D.C. Circuit did in Milanovich, then choice of forum principles can apply to choice of law, right?  If you want, forgive me for putting it this way, Your Honor, if you want to pluck out of the air that a choice of law, that a legal analysis that applies to one type of clause can, contrary to this court's precedent, apply to a wholly different clause. I think it was Judge Wald was in Milanovich's. There's no reason that the same principles shouldn't apply from choice of forum in the Bremen to choice of law in connection with the case before the D.C. Circuit. I must respectfully disagree, Your Honor. The reason that the same principles can't apply is because of enforcement. Isn't that what she said? What you're saying is you disagree with what she said, right? Absolutely correct, Your Honor. You cannot consider the public policy because if there's an entrenched rule, that ends the analysis under Wilburn Boat. For instance, you can look at this in other types of areas where Wilburn Boat has been applied to different clauses. For instance, in the 11th Circuit, the doctrine of utmost good faith, which requires truthful disclosure of facts on the application. The 11th Circuit has held that that's an entrenched rule of federal admiralty law. Therefore, it makes no difference whatsoever that Florida has expressed a very strong public policy nullifying that doctrine. Florida has passed a statute nullifying the doctrine of utmost good faith. Any policy of marine insurance to which Florida applies that doctrine is no longer effective. But the 11th Circuit has held because there's a rule on utmost good faith, it doesn't matter how much Florida may kick and scream about its public policy. On the other hand, the 5th Circuit has held that there is no rule of federal admiralty law on utmost good faith. Therefore, under Wilburn Boat, they go to the second step. The second step is to consider whether to create a rule, which courts generally have not done at all since 1955. And then they go to the third step, apply state law. But you can only get to the third step, which is to apply state law, which would be Pennsylvania's law on choice of law clauses. You only get to the third step if the answer to the first question is no. But the decision from A.G.F.V. Cassin is yes. And the decision from every other court has been yes, there is an insurance rule on this subject. So you never even get to the third step where you consider, where you look to what Pennsylvania's law is. That's the thing that distinguishes choice of law clauses from foreign selection clauses. If we have a rogue state that has a particular law that 49 other states find absolutely verboten, and this particular contract or a particular contract dealing with maritime chooses that particular rogue state, you're saying the other 49 states, if suit were brought in those states, have no say whatsoever with regard to their strong public policy against the rogue state. That is absolutely correct, Your Honor. The only test for the enforcement of the choice of law clause is stated by this court, the 1st, and the 11th. And as I said, Durham Auctions in Chan. And I'd like a moment to describe why those courts have retreated from Brennan. We'll give you a minute. Thank you very much, Your Honor. The, excuse me, I lost my train of thought. Join the club. Yes, could I ask you to repeat just the last sentence of your question, Your Honor, to make sure I give a good answer. I was just saying if you have 49 states and a rogue state and the choice of law is the rogue state. Yes, exactly, Your Honor. Let's assume that's New York. Let's assume every other state has followed Florida. Florida has nullified, by its statute, it's nullified utmost good faith, it's nullified breach of warranty, it's nullified the rule of admiralty law that there's only attorney's fees for bad faith. The only test for the enforcement of the clause, as stated in AGF Marine, is to determine whether or not the chosen state has enough connection to the parties. And on that point, every single court, including Durham Auctions and Chan, which, again, I maintain, misapply Bremen. Even those courts have held Great Lakes has enough connections to the chosen law, to New York, to make the clause reasonable and to enforce it, notwithstanding the fact that the insured is in another state and the insured wants the protection of his own state's law. Great Lakes is a U.K. company, is that right? Great Lakes is incorporated in the United Kingdom, but it has these connections, and these connections have been found adequate by every court which has considered them. New York is the first state in which Great Lakes was admitted as a surplus lines insurer, and if necessary, I can talk for a while about what that is. Does Great Lakes write policies in PA? It writes policies everywhere, Your Honor. New York is the first state in which it was admitted as a surplus lines carrier. It maintains its American trust accounts there. It maintains its American agent for service of process there, and New York was chosen deliberately because, unlike some other states like Florida, New York continues to apply the general principles of insurance law, which have started to degrade somewhat since 1955. Because of Wilburn Boat, there's been some degradation in what was once a uniform body of federal admiralty law. Prior to 1955, everything in a marine insurance policy would have been federal admiralty law, and then the Supreme Court surprises us and says not every doctrine. New York still... Isn't that what Judge Ambrose is talking about? It allows you to go and apply New York law, and perhaps that law is much different than every other state. Absolutely correct. That is absolutely correct, Your Honor. And Great Lakes relies when it sets... When it considers the amount of risk it bears and the premium it sets, it relies on the fact that everywhere it is issuing policies, it knows that the same body of law applies. Because New York imposes the duty of utmost good faith, which has been nullified by the Fifth Circuit Court of Appeals. New York law imposes the rule of strict or literal compliance with breach of warranties, which has been partially nullified with respect to certain types of warranties, depending on the circuit. That area is very much in flux. So by having a New York choice of law clause, Great Lakes guarantees that every one of its warranties... For instance, Your Honor, I won a case two years ago, open water case. I think it's referenced in my brief. It was a case involving a named operator warranty. Generally, the federal courts have held that there's no rule of federal admiralty law requiring strict or literal compliance with a warranty that says only certain named people will operate the vessel. Therefore, the District of Colorado said, okay, we find no rule of federal admiralty law. Therefore, we go look to New York law. New York still applies the doctrine of strict or literal compliance. So the court held the fact that someone not named in the insurance policy was at the helm. That nullified the policy. Great Lakes, for 16 years, has relied on every single decision from the federal courts saying that New York law will apply in the absence. Great Lakes has relied in terms of the policies it's issued, what risks it's willing to cover, It gets to charge the same premiums nationally and, frankly, somewhat lower because it can rely. Counsel, you're well over time by now. Thank you for giving me the extra time. I know Judge Fuentes has a question or two. I do, too. All of what you had said, I can't help but notice that Section 187 of the Restatement on Conflict of Laws does actually, which some courts have relied upon, says consider the policy of the state that is the forum state. Do you have a response to that? Yes, that's the federal form. The federal policy strongly expressed is that choice of law clauses in maritime contracts, all sorts of maritime contracts, not just marine insurance policies, are presumptively valid and enforceable so long as there is an adequate connection to the chosen form. And every court, even Durham Auctions has held, Great Lakes' connections to New York are more than adequate to justify selection as an alternative. The language is that courts should honor their choice of law, in fact, unless the application of the law of the chosen state would be contrary to the fundamental policy of a state which has materially greater interest than the chosen state in the determination of the particular issue. Your Honor, that's actually the second part of that statement. The first part says that choice of law clauses should be enforced, period, that even under a body of law, however, where they are not enforceable, they should still be enforced for those reasons. The first part of that clause is the one that's represented here, is the one that is applicable, because under federal law, choice of law clauses are presumptively valid and enforceable. You only look to the quoted part, the part that you just quoted, Your Honor, if there were a rule of federal admiralty law saying they are not enforceable, then you would weigh those other interests. But the first clause of that statement, of that passage from the restatement, says they're enforceable if it is the law of the court that applies. Raiders is headquartered in VA, right? Yes, they are. I believe they're incorporated there. Their policy was purchased in VA? Yes, it was.  Can I address that one concern, Your Honor? If there were no choice... Please, please, please, because we have to move on. Very quickly, Your Honor, I'll only say two sentences. If there were no choice of law clause, the only question would be where is there the most connection? And I've represented insurers in 100 other cases where there was no choice of law clause, and that almost invariably means the state where the policy was issued. If there were no choice of law clause, we wouldn't even be here. It would be Pennsylvania law because the insured is entitled. That is the strongest connection, but that is not the choice of law analysis here. Thank you very much, Your Honor. You mentioned a case, Carnival Cruise Lines, and I thought it might have some relevance in the case. I thought it might have relevance in this case. So I do want to ask what effect, if any, does Carnival Cruise Line have on the outcome of this case? There's a twofold answer. The first answer, what I believe is the correct one, absolutely none, because it involved a foreign selection clause. Now I'm interested in the second one. The second one, following Bremen, Carnival Cruise Lines is just an extension of Bremen. Bremen involved two massive corporations, each with equal bargaining power, and the Supreme Court laid out an analysis for foreign selection clauses, how to treat them. Carnival Cruise Lines just said that analysis applies with equal force, which considers the public policy of the forum. That analysis applies with equal force to a form adhesion contract, which, frankly, the two poor cruise ship passengers from Washington probably never read, beyond looking at how much they paid for it. The Supreme Court said they're valid and enforceable. But Carnival, even if you want to apply that analysis, then you get into the Durham Auctions territory. You get into the territory of Durham Auctions and Chan, Ninth Circuit also considered. And, again, if you'll allow even a moment, I'd like to address how the courts have retreated from those decisions. But in Durham Auctions, which involved exactly the same choice of law clause and exactly the same insurer, even there the Fifth Circuit said, contrary state law, a state bad faith law, which is contrary to New York's law, is not a sufficient public interest to outweigh the presumptive enforceability of the choice of law clause. The Chan case from the Ninth Circuit held the same thing. However, in the last decade, both the Fifth and the Ninth have issued choice of law decisions, which have implicitly rejected Durham Auctions and Chan. Both of them have applied what I contend is the correct rule. All you look to is you apply the fact that they're presumptively valid and enforceable, and then you ask, is there enough connection, not more connection, merely enough connection to make the choice reasonable. That is the, I believe it's the St. Paul case in the Fifth Circuit and the Galilee case from the Ninth. They're both cited in my brief, Your Honor. And both of those gave no consideration whatsoever to the strong public policy of the state. They applied the correct choice analysis from AGF v. Cassin, which is this Court's decision, King v. Allstate from the Eleventh Circuit, and Littlefield v. Acadia from the First. All they looked to was presume the enforceability unless the challenging party can show no substantial connection. I want to emphasize that again, Your Honor. You can only defeat it if they show no substantial connection. So you can't just weigh New York and Pennsylvania and say, well, there's more Pennsylvania. That would be the analysis if there were no choice of law clause. The only question is, from zero connections, is there enough New York? So if you were to conclude Pennsylvania has a ton of interest, but there's enough New York interest, the clause would be enforceable under every current Court of Appeals decision on the subject. And every Court of Appeals to consider it, and District Court has held, Great Lakes has enough connection to New York to make the clause reasonable. One last thing. Of course, Your Honor, I'm here for you. I had a little discussion with your friend across the aisle about the, I guess, changed nature of their argument on appeal, that perhaps some of these things being extra contractual wouldn't fit in at all. Yes. He suggested that you may have forfeited the forfeiture. Do you have a position on that very briefly? Very, very briefly, Your Honor. Since they didn't challenge whether that was an issue in their brief, I didn't raise it either. Well, it is in their brief. Excuse me, Your Honor. Then let me address it. Choice of law questions are reviewed de novo,  The prevailing party, Ken, to support the judgment, no. He didn't prevail. He's changed his argument. Yes. Oh, you're saying you can bring it up. Absolutely, Your Honor. All right. Thank you, counsel. You don't want to hear anything, Your Honor, about the analysis of the words? Because that is the whole second issue, Your Honor. I'll sit myself down. You've had a long time up there. Thank you very much, Your Honor. We'll rely on your brief. Thank you. Very briefly, Your Honor, as you've just heard, Great Lakes takes the position that the Bremen's public policy exception just doesn't apply to choice of law provisions at all. For the reasons we review in our brief, that is not correct. I think Judge Ambrose fully grasps this issue. The other side cited and discussed a bunch of cases. Let me just reemphasize. Durham auctions out of the Fifth Circuit did not involve a bad faith claim under Mississippi law. I've read that case backwards and forwards. It had nothing to do with a bad faith claim whatsoever. The Chen case they cite in their brief from the Ninth Circuit involved passengers falling off of a cruise ship. It involved a choice of forum provision. It did not involve a bad faith claim either. The Galilee case did involve whether federal advocacy law, also from the Ninth Circuit, could overcome Montana law under the Bremen. And what the Ninth Circuit said is that federal law takes precedence over state law. So, of course, we recognize that federal law will always take precedence over state law. Here the issue is simply whether Pennsylvania law is important enough of a policy to displace New York law. And then lastly, the AGF Marine case, which Judge Fuentes, he wrote, and I believe Judge Shigarashi were on the panel, that had nothing to do with how broadly the New York choice of law provision in this insurance policy extends. It had nothing to do with whether it applies to extra contractual tort-like claims. That involved a loss payee clause. And under admiralty law, the loss payee follows the terms of the underlying policy, which was determined by federal admiralty law. So the other side says a lot of cases favor it from this court and from other courts, but all the ones that I just described are totally inapplicable. That is all I wanted to say in my rebuttal time, unless you have any other questions. Thank you, counsel. Thank you. Thank you. We will take this case under advisement. We will ask, though, that the parties order the transcript in this case and split the cost of the transcript. The clerk can help you out on that. But we wanted to thank counsel for their excellent briefing and oral argument today in this really interesting case. And we wish you well.